UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | Criminal No. 03-10213-GAO |
| JOAREZ REIS, | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**
**AND MOTION FOR DOWNWARD DEPARTURE**

The Defendant, Joarez Reis ("Reis"), submits this motion for downward departure and sentencing memorandum in connection with the plea and sentencing hearing scheduled for May 25, 2004.

## I. INTRODUCTION

Reis is scheduled to plead guilty to fourteen (14) counts of making false statements to a federal agency in violation of 18 U.S.C. § 1001; twenty (20) counts of filing false claims against the United States in violation of 18 U.S.C. § 287; and twenty (20) counts of mail fraud in violation of 18 U.S.C. § 1341. The Presentence Report ("PSR") in this case has calculated a total offense level of 19 and a criminal history category of II. PSR ¶¶ 59, 61-65. The criminal history category II is derived from a 1998 assault and battery (for which Reis received 1 point) and a related term of probation during which Reis is alleged to have committed the instant offenses (for which he received 2 points). PSR ¶¶ 61-65. This calculation produces a sentencing range of 33 to 41 months. In addition, the PSR has identified a maximum statutory fine of $13.5

million, PSR ¶¶ 114-115, a fine range under the Sentencing Guideline provisions of $6,000 to $60,000, PSR ¶¶ 120-122, and a special assessment of $5,400, PSR ¶ 116.

The parties have entered into a plea agreement (the "Agreement") in this case. *See* Addendum to the PSR. That Agreement contains the same offense level calculation that is contained in the PSR. *See* Agreement ¶ 3. However, the Agreement does not reference a criminal history category. Both Reis and the Government were under the impression at the time the Agreement was entered into that Reis's criminal history category was I. This is reflected in the Agreement by the fact that the parties agreed to make a joint recommendation of 30 months imprisonment. *See* Agreement ¶ 4(a)(i). A sentence of 30 months was at the bottom of what the parties believed to be the applicable Guideline range. While the Agreement states that the Defendant agrees that there is no basis for a departure from the sentencing range and, therefore, will not seek a departure on any ground, Reis respectfully submits that a criminal history category of II was simply not contemplated by the Agreement. *See* Agreement ¶ 4(c). The Agreement contains no restrictions with respect to fines and restitution.

## II. BACKGROUND

Reis, who was born and raised in Brazil, has lived in the United States since 1980 and is now a United States citizen. *See* PSR ¶¶ 13, 69, 75-77, 79. He lived in Hyannis, Massachusetts from 1987 to 2001. PSR ¶ 79. While he lived in Hyannis, Reis was very active in the Brazilian community. PSR ¶ 13. Reis was also a responsible, hard working employee at the Cape Codder Resort & Spa during his time in Hyannis. *See* **Exhibit "A."** More importantly, Reis was a loving and supportive father. *See* PSR ¶ 82a; **Exhibit "B."**

The assault and battery on Reis's record does not reflect Reis's character and significantly overstates what actually occurred. The incident involved a minor argument, during which "nothing really happened," with his then girlfriend, now wife, Salette Batista. *See* **Exhibit "C."** Ms. Batista called the police out of anger and only to stop the verbal altercation. *Id.* She did not was Reis arrested or charged, and only agreed to provide his address to the responding officers upon a promise that they would not arrest him. *Id.* The officers did not keep their promise, however, and arrested Reis at his home. *Id.* Nonetheless, it was Ms. Batista who later picked up Reis from the police station and drove him home that evening. *Id.* She also refused to request a restraining order. *See* PSR ¶ 61. Largely to avoid further court appearances and legal costs, and because he was dating Ms. Batista, Reis – after waiving his right to legal representation – agreed to resolve the case by means of a "continued with a finding, and was placed on unsupervised probation for six (6) months. *See* PSR ¶ 61. Reis and Ms. Batista got married just a few months later. *See* **Exhibit "C."**

## III. GUIDELINE ISSUES

A downward departure is appropriate in this case because Reis's criminal history category significantly over-represents the seriousness of his criminal record. Departures for the over-representation of criminal history are authorized by U.S.S.G. § 4A1.3, because the Sentencing Commission has recognized that the Guidelines' criminal history scoring system is not perfect. *See United States v. Lacy*, 99 F.Supp.2d 108, 121 (D. Mass. 2000). Section 4A1.3 therefore *encourages* downward departures if "'reliable information' indicates that the criminal history category 'significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will

commit further crimes.'" *Id.* at 121 (citations omitted) (emphasis added). Significantly, unlike departures in Chapter 5 of the Guidelines, the Court need not find that "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission" because "[t]he statutory authority for the promulgation of U.S.S.G. § 4A1.3 lies not in 18 U.S.C. § 3553(A)(7)(b), but 'in the provision of the Sentencing Reform Act, that gives the Commission the authority . . . to take into account, where relevant, the defendant's criminal background.'" *Lacy*, 99 F. Supp.2d at 121, n.28 (citations omitted); *see also United States v. Wilkes*, 130 F. Supp.2d 222, 239-40 (D. Mass. 2001).

Reis's criminal record is more similar to a category I offender rather than category II offender. In *Wilkes*, the defendant's criminal history score derived from two convictions for minor drug offenses and his participation in the instant offense while under supervision for one of those convictions. 130 F. Supp.2d at 239. The court granted the defendant a downward departure, stating that his "minor criminal record paints a picture of the typical Category I offender, not a Category III offender." *Id.* In *United States v. Mejia*, 278 F. Supp.2d 55, 62-63 (D. Mass. 2003), the court found that a downward departure was appropriate from category III to category II, because the underlying facts of his prior offenses were significantly over-represented his criminal history category. Similarly, Reis's criminal history score derives from a single incident the underlying facts of which do not support a criminal history category of II.

## IV. <u>ECONOMIC PENALTIES</u>

Reis would also request that there be no fines or restitution imposed in this case. As evidence by the PSR, Reis is clearly unable to pay any economic penalties imposed by

the Court. *See* PSR ¶¶ 99-104. Reis would accordingly request that a fine not be issued on that basis. Further, Reis submits that restitution should be waived on the basis that "determining complex issues of fact related to the cause or amount of the victim[s'] losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." *See* 18 U.S.C. § 3663A. Finally, Reis understands that a mandatory special assessment of $5,400 ($100 for each count) will be imposed under 18 U.S.C. § 3013.

## V. CONCLUSION

For the foregoing reasons, Reis respectfully submits that the just and appropriate sentence in this case would be a period of incarceration for 30 months; no fines or restitution; and a special assessment of $5,400.

Respectfully submitted,

JOAREZ REIS

/s/ Paul V. Kelly (NAK)
Paul V. Kelly (BBO No. 267010)
Nicholas A. Klinefeldt (BBO No. 647422)
KELLY, LIBBY & HOOPES, P.C.
175 Federal Street
Boston, MA. 02110
(617) 338-9300

May 21, 2004

# EXHIBIT “A”




April 21, 2004
The Honorable George A. O'Toole
C/o Paul Kelly, Esquire
Kelly, Libby & Hoopes
175 Federal Street
Boston, MA 02110

Dear Judge O'Toole:
I am writing this letter to you on behalf of Mr. Joarez O. Reis. Mr. Reis and I worked closely together for many years; writing this letter is a responsibility that I do not take lightly.
I was the Innkeeper at the Dan'l Webster Inn in Sandwich, Joarez ( I call him "Joe") was one of our servers in the dining room. As the Innkeeper I oversaw all staff members and was always impressed by Joe. He was one of my hardest working employees.
I have been with the same parent company for 28 years now and have supervised a great many employees. Joe stands out in my mind for many good reasons, but perhaps most of all was his dedication to his daughter. Joe was always speaking about her and was very proud of her.
I always felt comfortable giving Joe tough assignments such as waiting on V.I.P's and sought his input when deciding on policies and new ideas. I do not recall Joe ever missing a scheduled shift for any reason. I do however remember that Joe was the one I would call to help cover when others couldn't make it in. Joe never let me down; he always carried himself in an extremely professional manner and was well respected by his coworkers.

I serve on many boards and committees across Cape Cod; most recently as the Chairman of the board of the Cape Cod Chamber of Commerce. I interact with many people in my business and personal life and I feel that I can see the good things in the people I meet. Joe has an awful lot of good to look forward to and I wish him and his daughter much success in their future.

Please feel free to call me with any questions or concerns regarding Joe Reis.

Sincerely,

Paul Rumul

Paul Rumul
General Manager
Cape Codder Resort & Spa
508-771-3000x701 (work)
508-888-4905 (home)

# EXHIBIT “B”

Maria Vanessa P. Reis
2601 SW Archer Rd. #349
Gainesville, FL 32608

February 12, 2004

Massachusetts District Court (First Circuit)
ATTN: Honorable Judge George A. O'Toole
Boston, MA 02110

Re: Joarez O. Reis – Crim. No. 03-10213-GAO

To the Honorable Circuit Judge O'Toole:

I am the daughter of Joarez O. Reis. I am 22 years old and a senior at the University of Florida majoring in Psychology and Violin Performance. Upon completing my undergraduate career I aspire to obtain a master's degree through the medical school and work as a Physician's Assistant.

My father is currently being detained at the Donald W. Wyatt Detention Facility in Central Falls, RI awaiting his sentence. I respectfully would like to request to you, Honorable Judge, before sentencing my father to please take into consideration how much I depend on his support to continue with my studies. I currently work two jobs and play with three orchestras while trying to balance a full class load, extracurricular activities, and volunteer work. While I have a scholarship and an amazing mother who does the best that she can to raise my six-year-old sister and help me, I struggle to get by. My father was my main source of support, and I fear that even with a scholarship I will not be able to attend graduate school without his help and support.

I realize that my father has made some questionable choices in his life that has put him in the situation he is in today, but I can attest that he is an incredible father and human being. He has the biggest heart of anyone I know, and is always willing to help anyone. Furthermore, his kindness, patience, and gentle manner are immediately obvious upon meeting him. I have no doubt that he has learned from his mistakes and I am convinced that upon completing his assigned prison term he will lead not only a law-abiding, but also an exemplary life.

I speak from my heart, your honor, and plead with you to please take into consideration these extenuating familial circumstances. I thank-you for your time and trust that you will make the best decision whatever it may be.

Respectfully,

Maria Vanessa P. Reis

Maria Vanessa P. Reis

# EXHIBIT "C"

Salete Reis Batista

20 Glenn Rd.

Hyannis , MA , 02601

May 20 , 2004

U.S. District Court

Dear Honorable Judge:

I`m writing you this letter to inform you that on December 23 , 1998 . I had an argument with my husband Joarez O Reis and because , I was very angry , I made call to the Barnstable Police in order to stop the verbal altercation.
When the Police came , my husband had already left. At the time , I didn`t want him to be arrested because nothing really happened.
I only provided the Police my husband address because the said they would only talk to him.
My husband was released from the Barnstable Police .
The same evening , and I went the to pick him up. At the time of this incident , Joarez reis was my boyfriend, Few months later we were Married. Although we are separated at this time, We have plans to Reunite agaim after his release.
I have visited him many times at the DONALD W. WYATT DETENTION , And he seems to be in good Spirits.

Sincerely,

Salete Batista. [signature] 5-19-05.